UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0930-B |
| | § | |
| PETRA GROUP, INC., BLANCA | § | |
| HADDAD, IBRAHIM HADDAD, | § | |
| SHARJEEL SURANI, CITY OF | § | |
| FARMERS BRANCH, DALLAS | § | |
| COUNTY TAX ASSESSOR, and | § | |
| CARROLLTON-FARMERS BRANCH | § | |
| ISD, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Government's Motion for Substitute Service (Doc. 15). The Government asks the Court to issue orders to appear under 28 U.S.C. § 1655 for Defendants Petra Group, Inc. ("Petra Group"), Blanca Haddad ("Blanca"), and Ibrahim Haddad a/k/a Abe Haddad ("Ibrahim" or collectively with Blanca, "the Haddads") and to authorize service of the orders by publication. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

### I.

### BACKGROUND

This is a suit to enforce a restitution lien. In October 2021, Blanca pleaded guilty to and was convicted of conspiracy to commit wire fraud. *See United States v. Haddad*, 2022 WL 347609, at *1 (N.D. Tex. Feb. 4, 2022). Blanca was sentenced to 60 months of imprisonment and ordered to pay

- 1 -

a $100.00 special assessment and $2,464,647.00 in victim restitution. *Id.* The Court ordered Blanca to surrender to the Bureau of Prisons ("BOP") by January 5, 2022. *Id.*

In January 2022, the Government informed the Court that: (1) Blanca failed to report to the BOP on January 5 as ordered; (2) wire transactions showed that Blanca and her husband Ibrahim had sold their residence and transferred the proceeds to a foreign bank account; and (3) Blanca and Ibrahim's whereabouts were unknown. *Id.* Based on this information, the Government asserted that Blanca had absconded and sought entry of a restraining order preserving Blanca's assets for payment of restitution. *Id.* The Court granted the motion on February 4, 2022, and the restraining order remains in place today. *Id.* at 5–6.

On April 27, 2022, the Government filed the instant suit seeking to enforce its restitution lien[1] on Blanca's property. *See* Doc. 1, Compl. Among others,[2] the Government names as defendants Blanca, Ibrahim, and Petra Group—a corporation the Government contends is Ibrahim's alter ego. *Id.* at 1–2. The Haddad's whereabouts remain unknown. *Id.* at ¶ 2 n.1; Doc. 15, Mot., 5. Predictably, the Government's efforts to personally serve Blanca and Ibrahim to date have been unsuccessful. Doc. 15, Mot., 5. As for Petra Group, the Government states that it attempted service at Petra Group's registered office and "was . . . informed that Petra Group had 'closed down.'" *Id.* at 2.

In light of the difficulty it has had serving Blanca, Ibrahim, and Petra Group, the Government filed the instant motion requesting that the Court issue orders to appear and authorize service of the

---

[1] When a court orders a criminal defendant to pay restitution, the Government obtains a federal-tax-type lien on "all property and rights to property of [the defendant]" until the restitution order expires or is satisfied. 18 U.S.C. § 3613(c); *United States v. Loftis*, 607 F.3d 173, 179 n.7 (5th Cir. 2010) ("The Mandatory Victims Restitution Act makes a restitution order enforceable to the same extent as a tax lien.").

[2] Sharjeel Surani, the City of Farmers Branch, the Dallas County Tax Assessor, and Carrollton-Farmers Branch ISD are also named defendants in this suit but are not relevant to the disposition of the instant motion. *See* Doc. 1, Compl., 1.

orders by publication under 28 U.S.C. § 1655. Doc. 15, Mot., 1. The Court reviews the motion below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 4(n)(1) provides: "The court may assert jurisdiction over property if authorized by a federal statute. Notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule." One example of a statute described by Rule 4(n)(1) is 28 U.S.C. § 1655. Section 1655 states:

> In an action in a district court to enforce any lien upon or claim to . . . real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.
>
> Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.
>
> If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action. When a part of the property is within another district, but within the same state, such action may be brought in either district.
>
> Any defendant not so personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside the judgment and permit such defendant to plead on payment of such costs as the court deems just.

28 U.S.C. § 1655.

## III.

## ANALYSIS

The Government requests that the Court (1) issue orders to appear under § 1655 as to Blanca, Ibrahim, and Petra Group and (2) authorize service of said orders by publication. *See* Doc. 15, Mot., 1. In support, the Government argues that it has established each prerequisite to § 1655 and that, given Blanca and Ibrahim's flight, personal service on them and on Petra Group is "not practicable." *Id.* at 4–6.

The Court begins its analysis below by identifying four prerequisites to the application of § 1655. Then, finding three of the four prerequisites established as to Blanca, Ibrahim, and Petra Group, the Court separately considers whether the fourth prerequisite has been established as to each defendant. Ultimately, the Court concludes that § 1655 applies to Blanca and Ibrahim but not to Petra Group.

A.   *Section 1655's Prerequisites*[3]

The Government correctly identifies three of four prerequisites to application of § 1655. *See* Doc. 15, Mot., 3. First, the underlying suit must be a proceeding *in rem*, because § 1655 does not apply to suits *in personam*. *See Stewart v. United States*, 242 F.2d 49, 52 (5th Cir. 1957); *Harrison v. Prather*, 404 F.2d 267, 269 (5th Cir. 1968). Second, "the proceeding must be in aid of some preexisting claim . . . and not a proceeding to create for the first time a claim to the property." *United States v. Cornwell*, 2020 WL 674092, at *5 (M.D. Fla. Feb. 11, 2020) (quoting *McQuillen v. Nat'l*

---

[3] Although the Court does not address it as a separate prerequisite, it should be noted that § 1655 does not confer subject-matter jurisdiction—meaning "a plaintiff must allege independent grounds for federal court jurisdiction." *Ga. Cent. Credit Union v. Martin G.M.C. Trucks, Inc.*, 622 F.2d 137, 138 (5th Cir. 1980) (per curiam); *see also Wise v. Bank of Am., N.A.*, 2011 WL 13119079, at *4 (S.D. Tex. June 15, 2011). The Government has done so here by alleging jurisdiction under 28 U.S.C. § 1345. *See* Doc. 1, Compl., ¶ 9.

*Cash Reg. Co.*, 112 F.2d 877, 880 (4th Cir. 1940)); *see also Morrison Flying Serv. v. Deming Nat'l Bank*, 404 F.2d 856, 862 (10th Cir. 1968). And third, "the property in question must have a situs within the district in which [the] suit is brought." *Cornwell*, 2020 WL 674092, at *5 (quoting *McQuillen*, 112 F.2d at 880).

The Court agrees with the Government that these prerequisites are easily satisfied. First, the Government's suit is brought solely to enforce its lien against real property, *see* Doc. 1, Compl., 1, making it an *in rem* proceeding. *See Cornwell*, 2020 WL 674092, at *1, *5 (applying § 1655 to a federal tax lien); *United States v. Feazel*, 49 F. Supp. 679, 682–83 (W.D. La. 1943) (applying the predecessor statute to § 1655 to a federal tax lien). *See generally Loftis*, 607 F.3d at 179 n.7 ("[A] restitution order [is] enforceable to the same extent as a tax lien."). Second, the Government's lien on Blanca's property originated upon the issuance of the Court's October 2021 judgment—meaning the lien preexisted the instant suit. *See* 18 U.S.C. § 3613(c); *Haddad*, 2022 WL 347609, at *1. And third, the property at issue is located at 13210 Senlac Drive, Farmers Branch, Texas 75234, which is within the Northern District of Texas. *See* Doc. 1, Compl., ¶ 10.

If, as the Government contends, the three items identified above were the only prerequisites to § 1655's applicability, the Court could stop here. However, the Government does not substantively discuss what the Court identifies to be a fourth prerequisite: that the defendant "cannot be served within the State, or [will] not voluntarily appear." 28 U.S.C. § 1655. And though some courts do not separately discuss plaintiffs' ability to serve defendants or defendants' willingness to appear when granting motions similar to the Government's, *see, e.g.*, *Cornwell*, 2020 WL 674092, at *5, the statutory language is clear that a court's authority to embark on the procedures provided for in § 1655 is limited to those *in rem* proceedings where the defendant cannot be served or refuses to

- 5 -

voluntarily appear. *See Ware v. Anderson*, 2008 U.S. Dist. LEXIS 36063, at *1 (E.D. Tenn. Mar. 14, 2008) (denying a plaintiff's motion for a § 1655 order where the plaintiff failed to demonstrate that the defendants could not be served within the state); *Citizens & S. Nat'l Bank v. Auer*, 514 F. Supp. 631, 633 (E.D. Tenn. 1977) ("Prior to [a § 1655 order], it is essential that the Court be satisfied that the defendant cannot be found and personally served within the state." (citing 4 Wright & Miller, *Federal Practice & Procedure* § 1118)). As such, the Court will evaluate whether this fourth prerequisite has been established as to Blanca, Ibrahim, and Petra Group.

    1.    <u>Blanca and Ibrahim</u>

The Court finds that the Government has sufficiently demonstrated that Blanca and Ibrahim "cannot be served within the State." *See* 28 U.S.C. § 1655. The Court is uniquely familiar with Blanca's fugitive status and Ibrahim's apparent assistance therewith. *See Haddad*, 2022 WL 347609, at *1. Notwithstanding their flight and unknown whereabouts, the Government attempted to personally serve the Haddads at an address obtained from public records. *See* Doc. 15, Mot., 5 (citing Doc. 11, Blanca Return Serv.; Doc. 12, Ibrahim Return Serv.). Under these circumstances, the Court is satisfied that the Haddads "cannot be served within the State" and that issuance of an order to appear under § 1655 is appropriate. *See* 28 U.S.C. § 1655; *cf. United States v. Estate of Swan*, 441 F.2d 1082, 1086 (5th Cir. 1971) (affirming a district court's application of § 1655's service procedures where the defendant "absented herself from the state . . . and rendered herself inaccessible to personal service"). Further, these facts demonstrate that personal service of a § 1655 order is not practicable. *See United States v. Brody*, 213 F. Supp. 905, 908 (D. Mass. 1963) ("A fortiori service by publication was proper because Brody was a fugitive who chose to leave no address.").

Accordingly, the Court **GRANTS** the Government's motion as to Blanca and Ibrahim and will issue orders to appear for each and authorize service of the orders by publication.[4]

> 2.     Petra Group

Unlike the Haddads, the Court finds that a § 1655 order as to Petra Group is unwarranted. The Government states that it "attempted to serve Petra Group at the address filed on record with the Texas Secretary of State for its registered agent (Ibrahim) and was informed that the business had apparently 'closed down.'" Doc. 15, Mot., 6. And while the Government concedes that it could seek to serve Petra Group through the Texas Secretary of State under Texas law as authorized by Federal Rule of Civil Procedure 4(h), it contends that "§ 1655 is the proper route where Ibrahim—Petra Group's sole shareholder, officer, and director, as well as its registered agent—continues to evade service and causes Petra Group to remain absent from this suit." Doc. 15, Mot., 6. The Court disagrees.

As the Government recognizes, Tex. Bus. Org. Code Ann. § 5.251(1) permits the Texas Secretary of State to act as an agent for service of process where a "foreign filing entity . . . fails to appoint or does not maintain a registered agent in [Texas]; or . . . the registered agent . . . cannot with reasonable diligence be found at the registered office." *See id.* Thus, unlike Blanca and Ibrahim, Petra Group *can* be served within the state of Texas—meaning that § 1655 applies only if the Government can show that Petra Group "does not voluntarily appear." 28 U.S.C. § 1655; *Ware*, 2008 U.S. Dist. LEXIS 36063, at *1.

---

[4] The Government "requests that the Court direct publication of the order in *The Daily Commercial Record*." Doc. 15, Mot., 7. According to the Government, "*The Daily Commercial Record* is appropriate here because it is a newspaper of general circulation in Dallas County Texas, the location of the real property that is the subject of this action." *Id.* The Court agrees and will authorize publication of its § 1655 orders in *The Daily Commercial Record*. *See Estate of Swan*, 441 F.2d at 1085.

Here, even accepting the Government's allegation that Ibrahim is "Petra Group's sole shareholder, officer, and director, as well as its registered agent," Doc. 15, Mot., 6, it has not demonstrated that Petra Group has voluntarily refused to appear. Tellingly, the Government uses the subheading "Petra Group is *unlikely* to appear voluntarily" in laying out its argument. *See id.* At most, the Government offers that it "mailed a copy of the Complaint along with a request to waive service of a summons to Petra Group . . . at [its] last known address via certified mail, return receipt requested," but has not received a response. Doc. 15, Mot., 5 n.1. While the refusal to waive service might provide some indication that a party will not voluntarily appear in a case, the Government has not provided a return receipt for its mailing showing that Petra Group actually received the waiver request. And, in any event, the Government appears to have confirmed that the address it mailed the waiver to is outdated. *See* Doc. 15, Mot., 2, 5 n.1 (using the term "last known address" to describe both the address where the waiver was sent and the address at which the Government attempted service and learned that Petra Group had closed down). In sum, absent some indication that Petra Group has actual notice of this suit, the Court cannot conclude that its failure to appear is voluntary. And given that the Government is admittedly aware of a method by which it can serve Petra Group directly, Doc. 15, Mot., 6, the Court is unconvinced that resorting to § 1655 is appropriate at this stage. Accordingly, the Court **DENIES** the Government's motion as to Petra Group.

## IV.

## CONCLUSION

For the reasons set forth above, the Government's Motion for Substitute Service (Doc. 15) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motion is **GRANTED** to the

extent it seeks issuance of § 1655 orders to appear for Blanca and Ibrahim and authorization to serve those orders by publication. The motion is **DENIED** to the extent that it seeks the same relief as to Petra Group. The Court will issue notices and orders for Blanca and Ibrahim separately.

SO ORDERED.

SIGNED: June 22, 2022.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 9 -