UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0930-B |
| | § | |
| PETRA GROUP INC., | § | |
| BLANCA HADDAD, IBRAHIM | § | |
| HADDAD, SHARJEEL SURANI, | § | |
| CITY OF FARMERS BRANCH, | § | |
| DALLAS COUNTY TAX ASSESSOR, | § | |
| CARROLLTON-FARMERS | § | |
| BRANCH ISD. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff United States of America ("the Government")'s Motion for

Judgment (Doc. 40). For the following reasons, the Court **GRANTS** the Government's Motion

and **ORDERS** the appointment of a receiver and the sale of the property at issue.

## I.

## BACKGROUND

This is a suit against Blanca Haddad ("Blanca") and Ibrahim Haddad ("Ibrahim")

(collectively "the Haddads"), and various other interested parties, to enforce a restitution lien. In

October 2021, Blanca pleaded guilty to conspiracy to commit wire fraud. *See* J. at 1, *United States*

*of America v. Blanca Haddad*, No. 3:18-CR-571-B-1 (N.D. Tex. Oct. 12, 2021). Blanca was

sentenced to sixty months of imprisonment and ordered to pay $2,464,647.00 in victim

restitution and a $100.00 special assessment pursuant to the Mandatory Victims Restitution Act

of 1996 ("MVRA"). *Id.* at 2, 6. The Court ordered Blanca to surrender to the Bureau of Prisons

("BOP") by January 5, 2022. *Id.* at 2. Blanca never surrendered. In December 2021, Ibrahim,

Blanca's husband, hired a moving service to ship two forty-foot containers with household goods

and a car to Amman, Jordan. Doc. 40-1, Hedgepeth Aff., ¶ 8. The Government also became

aware of wire transactions by the Haddads indicating they were selling their residence and

transferring the proceeds to Ibrahim's bank account in Jordan. *Id.* Based on this information, the

Government believes the Haddads left the country. *Id.*

Further, Defendant "Petra Group [Inc.]—a corporation completely owned and controlled

by Ibrahim—also liquidated two parcels of real property in Dallas." Doc. 40, Mot. J., 3. However,

Petra Group was only able to successfully sell one of the parcels. *Id.* It failed to close on its sale of

the other property (the "Subject Property"), located at 13210 Senlac Drive, Farmers Branch,

Texas 75234. *Id.* at 1, 3. All of Petra Group's funds were then wired to Ibrahim's account in

Jordan. *Id.* at 3.

The Government filed its Complaint with the Court on April 27, 2022, seeking to

foreclose the judgment lien and sell the Subject Property through a receiver. Doc. 1, Compl. The

Complaint named Blanca, Ibrahim, and Petra Group (collectively, the "Haddad Defendants") as

Defendants, as well as Sharjeel Surani, City of Farmers Branch, Dallas County Tax Assessor, and

Carrollton-Farmers Branch ISD (collectively the "Other Defendants"). *See id.* The Other

Defendants each claimed an interest in the Subject Property. *See id.* ¶¶ 5–8. The Haddads were

served by publication pursuant to 28 U.S.C. § 1655 and failed to file an answer or otherwise

respond. *See* Doc. 21, Notice of Publication. Petra Group was served through the Texas Secretary

of State and also failed to answer the Complaint. *See* Doc. 23, Certificate Service. The Other

Defendants appeared, and each reached a settlement agreement with the Government. *See* Doc. 40, Mot. J., 4.

At the Government's request, the Clerk entered default against the Haddad Defendants on September 6, 2022. Doc. 33, Entry Default. The Government then filed its Motion for Judgment on March 13, 2023. Doc. 40, Mot. J. The Court requested further briefing from the Government and the Government submitted a supplemental brief on June 9, 2023. *See* Doc. 44, Order; Doc. 45, Suppl. Br.

In sum, the Other Defendants, through their settlement agreements, have agreed to an entry of judgment permitting the Government to foreclose on its lien on the Subject Property. *Id.* at 4. Thus, the Government seeks a default judgment against Blanca, Ibrahim, and Petra Group and a consent judgment against the Other Defendants. *Id.* at 17. These judgments would allow the Government to foreclose upon the Subject Property and appoint a receiver to manage and conduct the sale. *Id.* The Court considers the Government's Motion and Supplemental Brief below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for entry of default judgments in federal court. According to Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b)(2).

However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav.*

*Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnote omitted). A party is not entitled to a default

judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207,

212 (5th Cir. 1996). Rather, "the entry of default judgment is committed to the discretion of the

district judge." *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

Courts have developed a three-part analysis to guide this discretion. *See, e.g.*, *United States*

*v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey*

*v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include

> [1] whether material issues of fact are at issue, [2] whether there has been
> substantial prejudice, [3] whether the grounds for default are clearly established,
> [4] whether the default was caused by a good faith mistake or excusable neglect,
> [5] the harshness of a default judgment, and [6] whether the court would think
> itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine

whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co. v.*

*Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an

absolute confession by the defendant of his liability and of the plaintiff's right to recover"). In

doing so, the Court assumes that due to its default, the defendant admits all well-pleaded facts in

the plaintiff's complaint. *Id.* However, "[t]he defendant is not held to admit facts that are not

well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Ins. Co. of*

*the W. v. H&G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) ("A

defendant's default concedes the truth of the allegations of the Complaint concerning the

defendant's liability, but not damages."). Normally, damages are not to be awarded without a

hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

### III.

### ANALYSIS

Applying the three-part analysis, the Court concludes that a default judgment is procedurally warranted and supported by a sufficient factual basis in the Government's Complaint. As a result, the Court **GRANTS** the Government's Motion to foreclose on the Subject Property and appoint a receiver to handle the sale.

A.    *An Entry of Default Judgment Is Procedurally Warranted*

After reviewing the Government's Motion in light of the *Lindsey* factors, the Court finds that a default judgment is procedurally warranted. First, the Haddad Defendants have not filed any responsive pleadings and are in default. Consequently, there are no material facts in dispute. *See Lindsey,* 161 F.3d at 893; *Nishimatsu Constr.,* 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Second, the Haddad Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing the Government's interests." *See Ins.* Co. *of the W.,* 2011 WL 4738197, at *3 (citing *Lindsey,* 161 F.3d at 893). Third, the grounds for default are clearly established. *See Lindsey,* 161 F.3d at 893. The Haddad Defendants have failed to appear and answer after being properly served over twelve months ago. *See* Doc. 23, Certificate of Service; Doc. 21, Notice of Publication; *see also United States v. Washington,* 2017 WL 3394730, at *1–2 (N.D. Tex. Aug 8, 2017) (Boyle, J.) (entering default judgement against a defendant that failed to answer or

otherwise respond to the plaintiff's complaint for two months). Fourth, there is no evidence before the Court to indicate that the Haddad Defendants' silence is the result of a "good faith mistake or excusable neglect." *See Lindsey,* 161 F.3d at 893. In fact, the Government contends their silence is due to their decision to evade the enforcement of the criminal restitution order. Doc. 40, Mot. J., 7. Fifth, a default judgment is not unduly harsh in this case because the default judgment would merely enforce a judgment already obtained against Blanca over eighteen months ago. *See Lindsey,* 161 F.3d at 893. Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by the Haddad Defendants. *Id.* Thus, the Government has met the procedural requirements for default judgment.

B.      *There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, the Haddad Defendants are deemed to have admitted the well-pleaded allegations in the Government's Complaint. *See Nishimatsu,* 515 F.2d at 1206. Thus, the Court must review the pleadings to determine whether they provide a sufficient basis for the Government's claim for relief. *See id.* In conducting this analysis, the Court draws "meaning from the case law on Rule 8," requiring "a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs.,* Inc., 788 F.3d 490, 498 (5th Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). "The purpose of this requirement is to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations omitted) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

Here, the Government seeks enforcement of a restitution lien against Blanca through a foreclosure sale of the Subject Property held by Petra Group. The Government argues that because Petra Group and Ibrahim commingled their assets, Petra Group is Ibrahim's alter ego.

Doc. 40, Mot. J., 11–15. And as Ibrahim's alter ego, Petra Group's property, including the Subject Property, qualifies as jointly managed community property and Blanca's lien attaches to it. *Id.*

After reviewing the Motion for Judgment and the Government's supplemental briefing, the Court finds that the Government has sufficiently pleaded its default judgment claim. First, the Court concludes that the Government has a valid lien against Blanca which extends to Blanca and Ibrahim's community property. Second, the Court concludes that the Subject Property is included within Blanca and Ibrahim's jointly managed community property and thus subject to the lien in its entirety.

    1.       The Government's Lien Extends to Blanca and Ibrahim's Community Property

The Court begins with the Government's lien. On October 12, 2021, after Blanca pleaded guilty to conspiracy to commit wire fraud, the Court entered a judgment against her requiring her to, among other things, pay $2,464,647 in restitution. *See* J. at 1, 6, *United States of America v. Blanca Haddad*, No. 3:18-CR-571-B-1 (N.D. Tex. Oct. 12, 2021). The Government seeks to collect this money through the MVRA, 18 U.S.C. § 3613, and the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001. *See* Doc. 1, Compl., ¶¶ 38–39.

"The [MVRA] makes a restitution order enforceable to the same extent as a tax lien." *United States v. Loftis,* 607 F.3d 173, 179 n.7 (5th Cir. 2010). And "[l]ike the enforcement of a tax lien under the Internal Revenue Code," the Government may enforce an order of restitution against any property in which the debtor holds an interest. *United States v. Elashi,* 789 F.3d 547, 551 (5th Cir. 2015); *see also* 18 U.S.C. § 3613(a) ("[A] judgment imposing a fine may be enforced against all property or rights to property of the person fined . . . ."); 18 U.S.C. § 3613(f) ("[A]ll provisions of this section are available to the United States for the enforcement of an order of restitution.").

While federal law creates the lien, state law defines the property interests to which the lien attaches. *Elashi,* 789 F.3d at 548–49 (citing *United States v. Rodgers,* 461 U.S. 677, 683 (1983)). The Fifth Circuit has held that the MVRA extends to a debtor's community property. *See id.* at 551 (summarizing case law on property which a federal criminal debt may attach to). Texas law states that property possessed by either spouse during marriage is presumed to be community property unless there is "clear and convincing evidence" the property is separate. Tex. Fam. Code § 3.003. Thus, because the Government possesses a valid criminal debt against Blanca, the Government may enforce that debt against any community property held by Blanca or Ibrahim.

  2.  <u>The Subject Property Is Community Property</u>

The Court next turns to whether the Subject Property, as Petra Group's asset, is community property under Texas law. As mentioned above, state law defines the property interests to which a federal lien attaches. *Elashi,* 789 F.3d at 548–49. Under Texas law, property purchased during the marriage is presumed community property. *See* Tex. Fam. Code §§ 3.003, 3.102(c). The Government argues that because Petra Group is Ibrahim's alter ego, the Court may treat Petra Group's assets as part of the Haddads' community property. Doc. 40, Mot. J., 12–15. After reviewing Texas law and the facts at issue, the Court agrees.

Under the alter ego theory, Texas law permits courts to disregard the corporate entity when a corporation and individual unite such that the corporation ceases to be separate. *Mancorp Inc. v. Culpepper,* 802 S.W. 2d 226, 228 (Tex. 1990). A court may find an alter ego relationship upon reviewing the total dealings of the corporation and the individual. *Id.* Relevant factors include the individual's financial interest, the individual's ownership interest, the control the individual maintains over the corporation, and whether the individual uses the corporation

for personal purposes. *Id.* Where an alter ego relationship is established, the court may treat the individual and the corporation as one and the same. *Zahra Spiritual Tr. v. United States,* 910 F.2d 240, 245–46 (5th Cir. 1990) (applying Texas law).

Here, Ibrahim's actions demonstrate that Petra Group is his alter ego. Ibrahim is Petra Group's sole shareholder, officer, and director, giving him complete ownership over the corporation. *See* Doc. 1, Compl., ¶ 24. Ibrahim is the sole signatory of Petra Group's checking account at Chase Bank, and, on April 10, 2020, he directed excess funds of $214,064.77 from Petra Group's purchase of the Subject Property to the Haddads' joint checking account. *Id.* ¶¶ 25(a), 26(a). On at least five occasions between June 2021 and February 2022, Ibrahim transferred funds ranging between $9,000 and $210,000 from Petra Group's account to the Haddads' jointly owned accounts. *Id.* ¶ 26(b). On December 6, 2021, Petra Group received a $1.8 million online transfer from another company owned by Ibrahim, which was then wired to Ibrahim's offshore account in Jordan. *Id.* ¶¶ 27(c)–(e). In total, the Government estimates Ibrahim wired a total of $8 million from Petra Group's account to his personal account in Jordan. *See id.* ¶¶ 27(f)–(g). The Court concludes that Ibrahim has exclusive ownership and control over Petra Group and has continually used Petra Group funds for his own personal purposes. *See Mancorp,* 802 S.W. at 228. Thus, the Court is satisfied that Petra Group operates as Ibrahim's alter ego and will treat their assets as one and the same. And because Ibrahim, acting for Petra Group, purchased the Subject Property thirteen years after the Haddads were married, the Subject Property is the Haddads' community property. *See* Doc. 40-1, Hedgepeth Aff., ¶¶ 5–6; Doc. 1-4, Ex. C, 2; Tex. Fam. Code §§ 3.003, 3.102(c).

"Community property is further classified as either solely managed or jointly managed." *United States v. Anderson,* 2020 WL 4346883, at *2 (N.D. Tex. July 29, 2020) (Lynn, C.J.).

Whether property is solely or jointly managed affects the government's ability to collect a criminal debt. Specifically, the federal government may attach a debt to all of a debtor's solely managed community property, all of a couple's jointly managed community property, including the non-debtor spouse's undivided one-half interest in the property, and one-half of a non-debtor's solely managed community property. *Elashi,* 789 F.3d at 551.

Solely managed community property is property that a spouse would have owned if he or she were single, namely personal earnings, revenue from separate property, and recoveries for personal injuries. *Id.*; Tex. Fam. Code § 3.102(a). A spouse has sole management, control, and disposition of his or her solely managed community property. Tex. Fam. Code § 3.102(a). However, if this property is "mixed or combined with community property subject to the sole management, control, and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses." *Id.* § 3.102(b). Texas courts have conducted a fact specific inquiry to determine whether one spouse's solely managed community property has been mixed with the other spouse's solely managed community property. *Compare Cockerham v. Cockerham,* 527 S.W.2d 162, 170 (Tex. 1975) (holding that the reinvestment of profits of a solely managed business purchased during marriage constituted "capital improvements" with community property and thus the business was jointly managed), *with Montemayor v. Ortiz,* 208 S.W.3d 627, 645 (Tex. App. Corpus Christi-Edinburg 2006) (holding that because a husband "maintained full control over management and operations" of his business and "no community capital assets were used to increase the business," the business remained the husband's solely managed community property).

The Court finds that the Subject Property is the Haddads' jointly managed community property and thus subject to Blanca's lien in its entirety. First, the Government has presented

evidence that Ibrahim frequently commingled Petra Group's funds with the Haddads' personal funds. *See* Doc. 45, Suppl. Br., 8. For example, Ibrahim represented the Haddads' personal account was Petra Group's account to have profits from a real estate transaction deposited into the account. *See id.*; Doc. 45-1, Second Hedgepeth Aff., ¶ 7. The Haddads also deposited a check made out to Petra Group into an account for Endo Med Corp., a company owned and operated by Blanca. Doc. 45, Suppl. Br., 8; Doc. 45-1, Second Hedgepeth Aff., ¶ 8. Further, the Government has provided a chart detailing Petra Group, the Haddads, and Endo Med Corp.'s history of transferring funds between each other's accounts dating back to 2017. *See* Doc. 45, Suppl. Br., 9. The Court concludes that Ibrahim used community assets to increase Petra Group's business and used Petra Group's assets for the Haddads' personal benefit, making Petra Group's assets jointly managed community property. Thus, the Government may attach Blanca's criminal debt to the Subject Property in its entirety. *See Elashi,* 789 F.3d at 551.

C.      *The Government Is Entitled to Relief*

"The burden is on [the movant] to establish its entitlement to recovery." *See RLI Ins.* Co. *v. 2 G Energy Sys., LLC,* 581 F. Supp. 3d 817, 826 (W.D. Tex. July 24, 2020). The Government asks the Court for an entry of judgment against the Haddad Defendants permitting it to foreclose its lien upon the Subject Property. Doc. 40, Mot. J., 17. Additionally, it requests a consent judgment against the Other Defendants for the same relief. *Id.* "[T]he Government sufficiently states a claim for foreclosure of a lien if it (1) states the date the lien was assessed; (2) indicates that it has given notice of the assessment, made a demand for payment, and filed notice in the public records; and (3) seeks to foreclose its lien." *United States v. Stallons,* 2018 WL 3640201, at *2 (N.D. Tex. Apr. 23, 2018) (Toliver, Mag. J.), *report and recommendation adopted*, 2018 WL 3631821 (N.D. Tex. July 31, 2018) (Lindsey, J.).

The Government has done so here. The Court ordered Blanca to pay restitution in the amount of $2,464,647 on October 12, 2021. *See* J. at 1, 6, *United States of America v. Blanca Haddad*, No. 3:18-CR-571-B-1 (N.D. Tex. Oct. 12, 2021); Doc. 1, Compl., ¶ 19. The Government recorded a notice of lien in Dallas County, Texas on December 21, 2021. *See* Doc. 1, Compl., ¶ 21; Doc. 1-3, Ex. B. Now, since Blanca has failed to make any payments towards the lien, the Government seeks to foreclose on its lien. *See* Doc. 1, Compl., ¶ 22. And because the Subject Property is the Haddads' jointly managed community property, the Court concludes that a foreclosure sale of the Subject Property is appropriate, with the proceeds of the sale to go toward the outstanding balance of Blanca's restitution obligation. Further, given the Other Defendants' settlement agreements with the Government, the Court concludes that a consent judgment as to the Other Defendants is appropriate as well. *See* Doc. 40, Mot. J., 4, 16.

D.      *Appointment of Receiver*

The Government also requests the Court modify the sale procedure and appoint a receiver to conduct the sale. *See id.* at 17. As discussed in Section III.B, *supra*, criminal restitution liens are enforceable under the same procedures as tax liens, and receivers are often used to enforce tax liens. *See* 18 U.S.C. § 3613(a); 26 U.S.C. § 7403(d) ("[T]he court may appoint a receiver to enforce [a] lien . . . ."); *Elashi*, 789 F.3d at 549–51. Under the FDCPA, "[t]he property of a judgment debtor which is subject to sale to satisfy the judgment may be sold by judicial sale, pursuant to sections 2001, 2002, and 2004 or by execution sale pursuant to section 3203(g)." 28 U.S.C. § 3202(e). However, "[t]he court may at any time . . . modify[] the use of any enforcement procedure under [the FDCPA]." *See* 28 U.S.C. § 3013. The Government contends that the "listing and sale of the Subject Property by appointing a licensed realtor as a receiver instead of auction by the United States Marshals Service on the courthouse steps . . . is likely to

lead to a higher recovery for the benefit of the victim of Blanca's criminal deeds." Doc. 40, Mot. J., 17. Given these facts, the Court agrees that a receiver is appropriate here and will appoint the Government's requested receiver, Nolan Whisenhunt.

## IV.

## CONCLUSION

Because the Government has met its burden of establishing its right to a foreclosure sale, *see RLI Ins.* Co., 581 F. Supp. 3d at 826, the Court **GRANTS** the Government's Motion for Judgment (Doc. 40). The Court **ORDERS** that the federal lien attached to the Subject Property is hereby foreclosed. It also **ORDERS,** pursuant to 18 U.S.C. §§ 3613 and 3664 and 28 U.S.C. § 3202, that Nolan Whisenhunt is appointed as the Receiver for the Subject Property. The Court will subsequently enter a final order of judgment.

**SO ORDERED.**

**SIGNED: July 6, 2023.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE